# IN THE COURT OF APPEALS OF IOWA

No. 21-1495
Filed January 12, 2022

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**K.R., Mother,**
 Appellant,

**R.B., Father,**
 Appellant.

_____

Appeal from the Iowa District Court for Lee (South) County, Clinton R. Boddicker, District Associate Judge.

A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Alan Waples, Burlington, for appellant mother.

William (Bill) Monroe, Burlington, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kendra M. Abfalter of Public Defender Office, Burlington, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**MAY, Judge.**

A mother and father separately appeal the termination of their respective parental rights to their child, A.B. Both parents challenge the statutory grounds authorizing termination and object to the admission of drug-testing evidence. We affirm.

Our review of termination proceedings is de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

Iowa courts use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine whether: (1) grounds for termination have been established, (2) termination is in the children's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

In this case, neither parent addresses the second or third steps. So we focus on whether statutory grounds for termination were met.

Both parents' rights were terminated under Iowa Code section 232.116(1)(h) (2021). It authorizes termination when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). Both parents limit their challenges to the last element.[1] It is established when the State demonstrates the child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

Like the juvenile court, we conclude A.B. could not be safely returned to either parent. Both parents have long histories of drug abuse, including methamphetamine use. Their use continued during this case. In January 2021, both parents abruptly refused to continue with requested drug screenings. "We presume these missed drug tests would have resulted in positive tests." *In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020); *accord In re D.G.*, No. 20-0587, 2020 WL 4499773, at *4 (Iowa Ct. App. Aug. 5, 2020); *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017). And

---

[1] The mother also argues that the State failed to provide reasonable efforts toward reunification. But this argument is built upon facts outside of our record: The mother focuses on hearings and orders in 2018. But our record contains no filings or transcripts from before July 2019. It almost seems like the mother's argument was "cut and pasted" from a different case. In any event, given the record before us, we are unable to understand—much less act upon—the mother's reasonable-efforts argument. So we do not consider any reasonable-efforts challenge. *See In re J.J.*, No. 18-2175, 2019 WL 1055896, at *1 (Iowa Ct. App. Mar. 6, 2019) ("'To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume.' It is not our duty to 'speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments.'" (alteration in original) (citations omitted)).

this presumption was confirmed when both parents later tested positive for methamphetamine in February 2021, just two months before the start of the termination hearing. A parent's methamphetamine use creates a dangerous environment for children. *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017); *In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014). This danger was exemplified when A.B. tested positive for methamphetamine at the beginning of this case. We expect A.B. would face similar dangers if returned to either parent.

We also note that A.B. has serious health issues that require detailed attention and diligent care. A.B. receives both occupational and physical therapy to assist with delayed development. These therapies were not regularly completed when A.B. was in the mother and father's care. And once A.B. was placed in foster care, the mother and father missed many of A.B.'s medical appointments even though the foster mother provided them with appointment details. Given the potentially life-threatening implications of A.B.'s health issues, we share the juvenile court's concern for A.B.'s safety if he were to be returned to either parent.

The parents also argue that evidence of the February 2021 drug tests was improperly admitted at trial. The mother contends the evidence lacks foundation[2] while the father claims the tests amount to hearsay and lack foundation. While we review termination proceedings de novo, our review of subsidiary rulings—such as the admission of evidence—is for an abuse of discretion. *In re L.R.*, No. 13-0713,

---

[2] The mother claims the evidence is "inaccurate," but she points to no rule of evidence that would permit or require exclusion on this basis.

The mother also mentions "hearsay" in passing. But a passing reference does not create a viable argument for our review. *See State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010).

2013 WL 4504930, at *6 (Iowa Ct. App. Aug. 21, 2013). *But see State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021) ("We review hearsay claims, however, for corrections of errors at law."). And "[t]he discretionary decisions of the trial court are presumed to be correct until the contrary is shown by the complaining party." *Bremicker v. MCI Telecomm. Corp.*, 420 N.W.2d 427, 428 (Iowa 1988).

At the outset, we note the mother made no contemporaneous objection to this evidence. And while the father objected contemporaneously, he only raised a foundational objection. Neither parent raised a timely hearsay objection. So we focus on the issue of foundation.[3]

Turning to the merits, we think the State provided sufficient foundation. The question is whether the State offered testimony "sufficient to support a finding that the [drug test evidence] is what the [State] claims it is." Iowa R. Evid. 5.901(a); *see also* Iowa R. Evid. 5.901(b)(9) (providing "[e]vidence describing a process or system and showing that it produces an accurate result" is sufficient under the rule); *State v. Musser*, 721 N.W.2d 734, 750–51 (Iowa 2006). Here, the technician who took the hair samples for testing testified about the collection protocol and quality assurance processes. And a supervisor for the testing facility testified at

---

[3] We note the father raised a belated hearsay objection. Despite its tardiness, the court addressed the objection and ruled that the drug test results fell within the exception for regularly conducted activity, also known as the business records exception. *See* Iowa R. Evid. 5.803(6). On appeal, the parties do not challenge this determination. And "[w]e do not presume error." *Clement v. Irwin*, No. 19-1192, 2020 WL 4498860, at *2 (Iowa Ct. App. Aug. 5, 2020) (citation omitted); *see generally id.* (collecting cases noting the burden is on the appellant to establish error). Rather, we presume the court was correct. *See Cass Cnty. v. Audubon Cnty.*, 266 N.W. 293, 296 (Iowa 1936) (noting "the presumption that the action of the court was regular and lawful in all respects").

length regarding the laboratory process to obtain and then confirm positive test results. But most important, the technician confirmed that the evidence was what the State purported it to be: the results of a February 2021 drug screen for the mother and father. We believe this testimony meets the threshold test for authentication under Iowa Rule of Evidence 5.901(a).

In any event, even if the court should have excluded the evidence, it does not affect the proper outcome in this appeal. Even when we examine the totality of the record without the February 2021 drug tests, we are still convinced drug use remains a persistent problem for both parents. For instance, their refused tests from January 2021 are presumed positive. *See I.J.*, 2020 WL 1550702, at *2. And the parents' drug use endangers A.B. So termination of both parents' rights was proper.

**AFFIRMED ON BOTH APPEALS.**